Exhibit A

STATE OF MINNESOTA                              DISTRICT COURT

COUNTY OF RAMSEY                        SECOND JUDICIAL DISTRICT

---

The Midwest Disability Initiative and
Gerald Doyen,                                   Court File No.:

          Plaintiffs,

                              **SUMMONS**

vs.

Candyland, Inc.,

          Defendant.

---

THIS SUMMONS IS DIRECTED TO Candyland, Inc.:

    1.     YOU ARE BEING SUED. The Plaintiffs have started a lawsuit against you. The Plaintiffs' Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court, and there may be no court file number on this summons.

    2.     YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this summons a written response called an Answer within 20 day of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

        Patrick W. Michenfelder, Esq.
        Chad A. Throndset, Esq.
        Throndset Michenfelder Law Office, LLC
        One Central Avenue West, Suite 203
        St. Michael, MN 55376

    3.     YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.    YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.    LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6.    ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to this Complaint even if you expect to use alternative means of resolving this dispute.

THRONDSET MICHENFELDER, LLC

Dated: ___4/3___, 2017      By: _____

Patrick W. Michenfelder (#024207X)
Chad A. Throndset (#0261191)
Cornerstone Building
One Central Avenue W., Suite 203
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
Email: pat@throndsetlaw.com
*Attorneys for Plaintiff*

2

STATE OF MINNESOTA                                 DISTRICT COURT

COUNTY OF RAMSEY                           SECOND JUDICIAL DISTRICT

---

The Midwest Disability Initiative and                Court File No.:
Gerald Doyen,

                        Plaintiffs,

v.                                                **COMPLAINT FOR**
                                                 **INJUNCTIVE RELIEF**
                                                   **AND DAMAGES**
Candyland, Inc.,

                        Defendant.

---

Plaintiffs, by and through their undersigned counsel, bring this action against Candyland, Inc. for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and for violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A (the "MHRA"), and allege as follows:

### INTRODUCTION

1.      This is a civil rights action against Defendant for their discrimination against the disabled by their failure to provide equal access to its public facility in violation of the mandates of the ADA and the MHRA.

2.      The ADA is the central civil rights law protecting people with disabilities. The ADA uses different means than other civil rights laws, but the purpose of the laws is the same: the eradication of discrimination. As one legal scholar explained the similarity: A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are

1

the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people. Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

3.      Though disability rights laws are supposed to prevent the continued isolation and segregation of people with disabilities in the same tradition as other civil rights laws, some appear to regard disability rights requirements – particularly those involving physical access requirements, such as ramps and hand rails – as different, and less important, than other civil rights. *Id.* at 24. Some also appear to assume that ADA cases are abusive or unnecessary drains on courts. But private enforcement is central to accomplishment of the ADA's rightful purposes and, as has been demonstrated repeatedly, compliance does not happen without the credible threat of private enforcement. *Id.* at 9.

4.      Title III of the ADA (42 U.S.C. § 12181) broadly protects the rights of individuals with disabilities to independently and equally access places of "public accommodation." It requires places of public accommodation to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 1218. Defendant is a place of public accommodation for purpose of the ADA. (Id.).

5.      The Department of Justice has promulgated rules implementing Title III of the ADA, including the 1991 and the subsequent 2010 Standards for Accessible Design. The 2010 Standards set forth various standards for places of public accommodation under Title III to follow in order to make their facilities independently accessible to persons with

2

disabilities. At issue here are several of the standards specifically aimed at making places of public accommodation accessible to and independently usable by persons with disabilities.

6.      Plaintiff Doyen is a left leg below-the-knee amputee who also has a left hand deformity making it difficult to grasp, twist and hold things. Mr. Doyen is fully dependent upon the use of a wheelchair or motor scooter. He visited Defendants' premises in September of 2016 and, as set forth with specificity below, encountered unlawful and discriminatory barriers to equal and independent access and enjoyment of the premises.

7.      The significance of the kind of violations at issue here was highlighted in hearings preceding the ADA's passage when the National Council on Disability reported to Congress that:

> The survey results dealing with the social life and leisure experiences paint a sobering picture of an isolated and secluded population of individuals with disabilities. The large majority of people with disabilities do not go to movies, do not go to the theater, and do not go to sports events. A substantial minority of persons with disabilities never go to a restaurant, never go to a grocery store, and never go to a church or synagogue … The extent of non-participation of individuals with disabilities in social and recreational activities is alarming. (S. Rep. No. 116, 101st Cong., 1st Sess. 10-11 (1989)).

8.      The Supplementary Information of 28 C.F.R. § 36 provides, among other things, as follows:

> "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] all negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as

3

different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility (such as a bathroom instead of a kitchen sink for rinsing a coffee mug at work), all have a negative impact on persons with disabilities."

9.     Plaintiffs seek a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), Minn. Stat. 363A.33, Subd. 6, and Minn Stat. 363A.29, Subd. 3, enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to make readily achievable alterations to their facilities so as to remove physical barriers to access and make their facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and the MHRA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

10.     Plaintiffs further seek an order requiring Defendant to pay a civil penalty to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4; an award of their reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, and Minn. Stat. 363A.33, Subd. 7, or as otherwise provided by law; an award to Doyen for his damages, to be paid by Defendant pursuant to Minn. Stat. 363A.33, Subd. 6, Minn. Stat. 363A.29, Subd. 4 and Minn. Stat. 611A.79, Subd, 2; and such other relief as it deems just and proper, and/or is allowable under Title III of the ADA and the MHRA.

11.     Despite passage of the ADA more than 25 years ago, to this date, Defendant's facility is not fully accessible to, and independently usable by, persons with disabilities. Defendant has failed to remove architectural barriers and take the actions clearly required of it by the ADA, even though such actions are readily achievable, and Defendant's conduct constitutes an ongoing and continuous violation of the law.

### JURISDICTION AND VENUE

12.     Jurisdiction of this Court arises under Title III of the Americans with Disabilities Act (the ADA), 42 U.S.C. §§ 12181-12189, which provides for concurrent state and federal court jurisdiction.

13.     Venue in this judicial district is proper because Defendant is located in and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

### PARTIES

14.     Plaintiff Midwest Disability Initiative (MDI) is a Minnesota nonprofit corporation organized under Chapter 317A of the Minnesota Statutes. The purpose of MDI is to "make a trail and leave a path" by holding businesses that ignore the requirements of the ADA accountable and thereby educating the business, public and disabled communities as to the rights the disabled have under the ADA.

15.     Plaintiff Doyen is a left leg below-the-knee amputee who also has a left hand deformity making it difficult to grasp, twist and hold things. Mr. Doyen is fully dependent upon the use of a wheelchair or motor scooter.

16.     Doyen has an acute understanding of the discrimination people with disabilities regularly encounter when businesses ignore the ADA - and the humiliation, embarrassment, stigma, physical discomfort, stress, strain, fatigue and isolation from friends and family that results. Doyen is also well aware of the benefits for the disabled when responsible business owners take the ADA's requirements seriously. Doyen is very much committed to doing all that he can to help himself, and other disabled people, by pursuing a cause - holding businesses accountable for ignoring the ADA - that others may turn away from.

17.     Doyen, age 48, was born in Minnesota and has resided in Saint Paul, Minnesota all his life. Doyen presently resides at 325 Laurel Avenue, Apartment 106, St. Paul, Minnesota 55102. He regularly frequents businesses in the Twin Cities Metropolitan and surrounding area (Area) including restaurants, convenience stores, general stores, grocery stores and other business - and has done so for years and years. The ability to independently patronize businesses in the Area is important to Doyen and his quality of life; it enables him to obtain necessary goods and services and allows him to interact with the community, which is a critical social outlet for him.

18.     Doyen is a member of the Midwest Disability Initiative. Doyen suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA,

6

42 U.S.C. § 12102(2), and as defined by the MHRA, Minn. Stat. 363A.03, Subd. 12. Doyen is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*, and under the MHRA.

19.     Defendant Canyland, Inc. owns and/or operates "Candyland" St. Paul's Old Tyme Candy Store Famous Since 1932" and/or is the lessee of the real property upon which it is located, at 425 N Wabasha, in the City of St. Paul, Minnesota, a place of public accommodation within the meaning of the ADA. (Candyland or the Facility)

20.     The owner and/or lessor of the real property upon which the Facility is located, a place of public accommodation within the meaning of the ADA, is presently unknown.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

21.     More than twenty-five years ago, on July 26, 1990, President George H.W. Bush signed into law the ADA (42 U.S.C. § 12101, *et seq.*), a watershed civil rights act prohibiting discrimination on the basis of disability. The ADA broadly protects the rights of individuals with disabilities with respect to employment and access to State and local government services and places of public accommodation.

22.     In connection with the passage of the ADA, Congress made findings that:

> Historically, society has tended to isolate and segregate individuals with disabilities … discrimination against individuals with disabilities continues to be a serious and pervasive social problem ... (42 U.S.C. § 12101)

23.     The stated that the purpose of the ADA is to:

Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities ... Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities ... and invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities. See 42 U.S.C. § 12101(b)

24.     28 C.F.R. § 36.304 sets forth the following order of priorities for places of public accommodation: First, measures to provide access from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces. Second, measures to provide access to those areas where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables, providing brailed and raised character signage, widening doors, providing visual alarms, and installing ramps. Third, measures to provide access to restroom facilities. These measures include, for example, removal of obstructing furniture or vending machines, widening of doors, installation of ramps, providing accessible signage, widening of toilet stalls, and installation of grab bars. Fourth, any other measures necessary to provide access to the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

25.     The ADA "places the highest priority on measures that will enable individuals with disabilities to physically enter a place of public accommodation. This priority on getting through the door' recognizes that providing actual physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to

8

any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities." 23 C.F.R. $ 36 (Supplementary Information).

26.     28 C.F.R. § 36.201 (b) provides that both the landlord who owns a building that houses a place of public accommodation and the tenant who owns or operates a place of public accommodation subject to the requirements of the ADA.

27.     Title III of the ADA prohibits discrimination by places of "public accommodation," as that term is defined by 42 U.S.C. §12181 (7). It requires places of public accommodation to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12182.

28.     On July 26, 1991, the Department of Justice issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

29.     Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR Part 36) contains the 1991 ADA standards for Accessible Design (the 1991 Standards). The 1991 Standards were based on the Americans with Disabilities Act Accessibility Guidelines (the 1991 ADAAG) published by the Architectural and Transportation Barriers Compliance Board (Access Board) on the same date.

30.     In 2004, the Access Board issued final publication of revisions to the 1991 ADAAG (the 2004 ADAAG).

31.     The Department of Justice subsequently issued the 2010 Standards for Accessible Design (the 2010 Standards). The 2010 Standards include 28 CFR Part 36,

Subpart D and the 2004 (ADAAG) found at 36 CFR part 1191, appendices B and D. (See Department of Justice 2010 ADA Standards for Accessible Design, at p. 1)

32.     The ADA does not contain any "grandfathering" provision. Instead, all places of public accommodation are subject to the requirements of the 2010 ADA Standards for Accessible Design (the 2010 Standards), which became mandatory on March 15, 2012. The only permissible exceptions are those facilities that fall within the ADA's "safe harbor" provision, codified at 28 USC § 36.304 (d) (2) and appendix to § 36.304 (d). The ADA's safe harbor provision applies to facilities that were either fully compliant with the 1991 ADA Standards for Accessible Design (the 1991 Standards) as of March 15, 2012; or undertook new construction or alterations between September 15, 2010 and March 15, 2012 – in which case they can choose between compliance with either the 1991 or the 2010 ADA standards. (Id.) The safe harbor does not apply, however, to certain elements, such as swimming pools, which must comply with the 2010 standards regardless. (Id.) (See also, US Department of Justice, Civil Rights Division, ADA Requirements, Effective Date/Compliance Date. at www.ada.gov/revised _effective _dates-2010.htm)

## VIOLATIONS AT ISSUE

33.     In October of 2016, Doyen visited Candyland and encountered unlawful and discriminatory barriers including, but not necessarily limited to, the following: a sales counter lacking a portion that is at least 36 inches long and 36 inches high as measured from the floor in violation of the 2010 ADA Standards 904.4.1.

34.     The photographs attached hereto as Exhibit A depict violations identified in the preceding paragraph.

35.     The above listing is not to be considered all-inclusive of the barriers and violations of the ADA and MHRA encountered by Doyen or which exist at the Facility. In order to fully identify all of the discriminatory conditions at the Facility, Plaintiffs require an inspection which will be sought in the discovery phase of this litigation.

36.     Compliance with the ADA standards referenced above is required by 42 U.S.C. § 12182(b)(2)(A)(iv) because remedying the architectural barriers identified is readily achievable due to the lack of difficulty and low cost of remedying the barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable." 28 C.F.R. § 36.304(b).

37.     Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. See ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar.16, 2011).

11

38.   As a person with a disability, Doyen has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

39.   Doyen is not able to access the Facility independently on a full and equal basis and is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein because of his disabilities and due to the physical barriers to access and violations of the ADA and MHRA that exist at Defendants premises.

40.   Doyen lives near to the Facility. Doyen has patronized the Premises and intends to patronize it in the future, although the unlawful barriers described herein prevent him from being able to do so independently and deter him from doing so. Doyen's condition varies and, depending on the status of his condition on a given day, he is sometimes dependent upon having someone take him to or accompany him when he visits places. This limits his ability to make definitive plans to return to a place on a specific date. But he regularly patronizes businesses in the vicinity of the Facility and would return to patronize the Facility in the imminent future but for the barriers described herein.

41.   The violations discussed above presently deter and discourage Doyen from returning to the Facility for reasons including, but not necessarily limited to, the following: the above-referenced violations making it difficult or impossible for him to shop at the facility unless he twists, struggles and strains himself or obtains help from others; and puts him at risk of injury. All of these things negatively affect Mr. Doyen's sense of

12

independence and can lead to humiliating accidents, derisive comments, embarrassment, a loss of dignity, and feelings of being stigmatized as different or inferior.

42.     Mr. Doyen will return and patronize the Facility without hesitation when the barriers identified herein have been removed or cured: and he will return within the next several months in any event, albeit not independently, because it is located in an area he regularly socializes in and because he is interested in checking on the Defendant's ADA compliance and that of other similar businesses as a tester in hopes to thereby increase accessibility for the disabled in the Twin Cities Metropolitan and surrounding area.

43.     Absent injunctive relief, Defendant's unlawful conduct herein described will continue to cause injury to Plaintiff and other disabled individuals, who will continue to be unable to independently access the Premises and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of the rights ensured to the disabled by the ADA and MHRA.

### FIRST CAUSE OF ACTION
### (MDI and Doyen)

### VIOLATIONS OF THE AMERICAN'S WITH DISABILITIES ACT, 42 U.S.C. §§ 12101 *et seq.*

44.     Plaintiffs incorporate and re-allege the paragraphs above.

45.     Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

13

46.   A public accommodation under the ADA includes, inter alia, "sales establishments" and "a restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12182 (7).

47.   Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

48.   Defendant has discriminated against Doyen and others in that it has failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder as described above.

49.   Doyen has been denied full and equal access to the Facility and has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

50.   Defendant has failed to remedy barriers to full and equal access by Doyen, even though doing so, or implementing alternatives to barrier removal in accordance with 28 C.F.R. § 36.305, is readily achievable.

51.   Defendant's violations of the ADA are ongoing.

52.   Doyen is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm

14

upon his planned return visit to Defendant unless and until Defendant is required to remove the physical barriers to equal and independent access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

53.     This Court has authority under 42 U.S.C. § 12188 to grant injunctive relief, including an order requiring Defendant to make itself readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and/or to close the facility until such time as Defendants cure the ADA violations set forth herein.

54.     In addition, Defendants who have ignored the requirements of the ADA for the more than 25 years since it was enacted are not permitted skirt the Court's power to impose injunctive relief by claiming, only after they are sued, that they have addressed the violations at issue. As the United States Supreme Court has made clear, Courts will see through these bogus claims of "voluntary compliance." "It is the duty of the courts to be aware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit ...." *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952). In accordance with this precept, U.S. Supreme Court authority makes clear the extreme difficulty in persuading a court to dismiss a case on mootness grounds on the basis of voluntary cessation. In *Friends of the Earth v. Laidlaw Environmental Services*, the Court held that a claim for civil penalties intended to deter a polluter from exceeding discharge limits in a permit was not necessarily moot, even when the facility at issue had closed, because the defendant retained the permit. *Friends of the*

15

*Earth*, 528 U.S. at 193-94. Similarly, in *City of Erie v. Pop's A.M.*, the Court rejected the

suggestion of mootness filed by a prevailing plaintiff in a challenge to city restrictions on

adult dancing establishments. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287-88 (2000).

Even though the club had closed, the Court noted the city's continued stake in wishing to

enforce the statute enjoined by the lower courts and the possibility that the plaintiff would

reopen a new club.

55.     In the context of the ADA Courts have followed suit, repeatedly refusing to

accept arguments brought by newly repentant Defendants seeking to avoid the Court's

power to enjoin by invoking the doctrine of mootness. See e.g., *Moore v. Dollar Tree

Stores Inc.*, 51 Nat'l Disability Law Rep. P 25, 2015 WL 65661 (E.D. Cal. 2015); *Moeller

v. Taco Bell Corp.*, 816 F. Supp. 2d 831 (N.D. Cal. 2011); *Feldman v. Pro Football, Inc.*,

579 4-204 F. Supp. 2d 697 (D. Md. 2008), judgment aff'd, 419 Fed. Appx. 381, 24 A.D.

Cas. (BNA) 1178 (4th Cir. 2011); *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173,

19 A.D. Cas. (BNA) 1634 (11th Cir. 2007); *Sharp v. Capital City Brewing Company, LLC*,

680 F. Supp. 2d 51 (D.D.C. 2010); *Harty v. YDB Three Lakes, L.C.*, No. 09-61386, 2010

WL 2634443, *4 (S.D. Fla.2010). See also *United States v. Behrman*, 235 F.3d 1049, 1053

(7th Cir. 2000). *Spencer v. Kemna*, 523 U.S. 1, 17 (1996); *Murphy v. Hunt*, 455 U.S. 478,

482 (1982). (Defendant's failure to maintain the access routes to its premises is conduct

"capable of repetition yet evading review" and therefore cannot be mooted) and *Board of

Pardons v. Allen, 482 U.S. 369*, 370 n.1 (1987) and *City of Richmond v. J.A. Croson*

*Company*, 488 U.S. 469, 478 n.l (1989) (because damage claims seek compensation for past harm, they cannot become moot.)

56.     Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and are entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117 and 28 C.F.R. § 36.505, in connection with the prosecution of this matter.

## SECOND CAUSE OF ACTION
### (Doyen Only)

## VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. CHAPTER 363A

57.     Plaintiffs incorporate and re-allege the paragraphs above.

58.     Minn. Stat. § 363A.11 provides:

It is an unfair discriminatory practice:

(1)     to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of […] disability […]; or

(2)     for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.

59.     Under the general prohibitions established by the MHRA, Minn. Stat. § 363A.11, Subd. 2, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges,

advantages, or accommodations that is equal to the opportunities afforded to other individuals.

60.     Defendant has engaged in unfair discriminatory practices against Doyen and others in that it has failed to make its place of public accommodation fully accessible to persons with disabilities on an independent and equal basis in violation of MHRA, § 363A.11.

61.     Doyen has been denied full and equal access to the Facility and has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations offered therein on a full, independent and equal basis.

62.     Defendant has failed to remove architectural barriers to full and equal access by Doyen, even though removing the barriers is readily achievable.

63.     Defendant's violations of the MHRA are ongoing.

64.     Doyen is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to Defendant unless and until Defendant is required to remove the physical barriers to equal and independent access and MHRA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

65.     This Court has authority under Minn. Stat. § 363A.33, Subd. 6, and Minn. Stat. § 363A.29, Subd. 3-4, in issue an order directing Defendant to cease and desist from their unfair discriminatory practices and to take affirmative action to makes its facilities

readily accessible to and independently usable by individuals with disabilities. The Court furthermore has authority under these statutory provisions of the MHRA to order Defendant to pay a civil penalty to the state.

66.    Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and are entitled to recover reasonable attorneys' fees from Defendant as part of the costs, pursuant to Minn. Stat. § 363A.33, Subd.7.

### PRE-SUIT NOTICE, MINN. STAT. CHAPTER 363A.331

67.    Minn. Stat. § 363A.331 does not require that any "pre-suit notice" be provided before an action seeking to enforce compliance is commenced. Instead, as the text of the statute and the legislative history makes absolutely clear, pre-suit notice is entirely optional.

68.    The companion bills that ultimately resulted in the amendments codified at Minn. Stat. § 363A.331 were SF 2584 and HF 2955

69.    SF 2584 (the Minnesota Senate Bill), as introduced and posted on March 9, 2016, included a mandatory pre-suit notice requirement as follows: "Subd. 2. Demand letter seeking removal of architectural barriers. (a) Before bringing a civil action under section 363A.33, an attorney representing a person who alleges that a business has violated accessibility requirements under state or federal law *must* provide a demand letter to the business." (emphasis added)

70.    In like manner, HF 2955 (the Minnesota House Bill), as introduced and posted on March 10, 2016, also included a mandatory pre-suit notice requirement as

19



follows: "Subd. 2. Demand letter seeking removal of architectural barriers. (a) Before bringing a civil action under section 363A.33, an attorney representing a person who alleges that a business has violated accessibility requirements under state or federal law *must* provide a demand letter to the business." (emphasis added)

71.     On March 10, 2016 the Minnesota Senate Bill was referred to the Minnesota Senate Judiciary Committee.

72.     On April 8, 2016 Senator Dziedzic moved to amend the Senate Bill to eliminate mandatory pre-suit notice in favor of option to proceed with or without pre-suit notice, and testimony was presented to the Senate Judiciary Committee from the following individuals regarding the amendment: Ron Elwood of Minnesota Legal Aid, Beth Dadoun of the Minnesota Chamber of Commerce, Scott McLellan of the Minnesota Department of Labor and Industry, and Joel Carlson of the Minnesota Association for Justice. This testimony specifically addressed the concern that requiring pre-suit notice would create a disincentive for businesses to comply -- waiting to get caught before complying with applicable law – and the negotiation and balance that had been struck in favor of Senator Dziedzic's amendment preserving an option to proceed with or without pre-suit notice.

73.     On April 11, 2016 the Senate Judiciary Committee recommended passage of the Senate Bill, amended to remove the mandatory pre-suit notice requirement contained in the Senate Bill and make pre-suit notice optional.

74.     Also on April 11, 2016 the first engrossment of the Senate Bill was posted. The first engrossment contained the amendment recommended by the Senate Judiciary Committee removing the mandatory pre-suit notice and making pre-suit notice optional.

75.     On May 20, 2016 a motion prevailed in the Minnesota House of Representatives to concur with the Minnesota Senate amendments and the Minnesota House Bill was repassed in the Minnesota House of Representatives as amended by the Senate. Prior to the motion, Representative Smith, author of the House Bill, stated as to the amended pre-suit notice requirement: "The mandatory letter is now optional."

76.     On May 22, 2016 the repassed amended House Bill was presented to Governor Dayton and signed into law as Minn. Stat. 363A.331.

77.     The testimony of representatives from Legal Aid, the Chamber of Commerce, the Department of Labor and Industry, and the Minnesota Association for Justice before the Senate Judiciary Committee on April 8, 2016 and the remarks of Representative Smith on May 20, 2016 introducing the version of the bill that was passed into law clearly and without any question at all confirm that the mandatory notice requirement included in earlier versions of the bill were abandoned in favor of an optional requirement to provide notice in the bill that was passed into law, as does a simple comparison of the earlier versions of the bill to the version passed into law.

78.     The amended version of the bill that was signed into law does not contain the mandatory pre-suit notice that earlier versions of the bill did, and instead preserves the option to commence a lawsuit while specifying the content of a pre-suit notice if pre-suit

notice is sent. See Minn. Stat. 363A.331, Subd. 1 (a) "A notice sent before filing ... (b) ... If a notice is sent ..." In this way, the legislature addressed the concern that existed prior to the act's passage that "Hansmeier's first notice to Rowland came in what appears to be a form letter that provides no specific details of what she might be doing wrong. The letter says only that 'your property has issues that prevent persons with disabilities from patronizing your tenant's businesses on a full and equal basis." See e.g., 10/22/2015 Star and Tribune Article: Bar owner takes case on disability suits to D.C." Following passage of the statute, Hansmeier's pre-suit modus-operandi is prohibited; but parties retain the right to commence a lawsuit in the same manner they could prior to passage of Minn. Stat. 363A.331.

### MINN. STAT. CHAPTER 363A.331, Subd. 4

79.     Consistent with the Federal authority cited supra, Minn. Stat. 363A.331, Subd. 5 (b)(2) provides that "This section [Minn. Stat. 363A.331] does not bar a person from bringing an action if the person ... has a claim for damages resulting from an injury." Thus, where injury is alleged, a defendant is expressly precluded from utilizing the affirmative defenses set forth in Minn. Stat. 363A.331, Subd. 4 to "bar" an action.

80.     It is well established that emotional distress and mental anguish is a "genuine injury." See e.g., *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978). And damages for mental anguish are specifically contemplated as recoverable where a violation of the Minnesota Human Rights Act has occurred. Minn. Stat. 363A.33, Subd. 6, Minn. Stat. 363A.29, Subd. 4.

81.    Damages for mental anguish can be recovered even where the plaintiff has not sought medical treatment: "[M]edical testimony, although relevant, is nonecessary… plaintiff's own testimony may be sufficient to establish humiliation or mental distress." *Williams v. TWA*, 660 F. 2d 1267, (8th Cir. 1981).

82.    Because Plaintiff has alleged the injury of mental anguish resulted from Defendants unlawful and discriminatory violations of the Minnesota Human Rights Act, Defendants are expressly precluded from the affirmative defenses set forth in Minn. Stat. 363A.331, Subd. 4 to "bar" an action.

**WHEREFORE**, Plaintiffs respectfully request:

a.    That the Court issue a Declaratory Judgment determining that Defendant's facility, at the commencement of this instant suit, is in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations, and that Defendant's conduct and/or inaction constitutes an unfair discriminatory practice under the MHRA.

b.    That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), Minn. Stat. 363A.33, Subd. 6, and Minn Stat. 363A.29, Subd. 3, enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to make readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and the MHRA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods,

23

services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

    c.      That the Court order Defendant to pay a civil penalty to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4.

    d.      That the Court award Doyen damages, to be paid by Defendant pursuant to Minn. Stat. 363A.33, Subd. 6, Minn. Stat. 363A.29, Subd. 4 and Minn. Stat. 611A.79, Subd, 2.

    e.      That the Court award Plaintiff reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, and Minn. Stat. 363A.33, Subd. 7, or as otherwise provided by law; and

    f.      That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA or the MHRA.

Dated: April 3, 2017

**THRONDSET MICHENFELDER, LLC.**

By: _____
    Patrick W. Michenfelder (#024207X)
Chad A. Throndset (#0261191)
Cornerstone Building
One Central Avenue West, Suite 203
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
Email: pat@throndsetlaw.com
*Attorneys for Plaintiffs*

24

# Exhibit A

3/30/2017                                      435 Wabasha St N - Google Maps

435 Wabasha St N



Image capture: Oct 2015    © 2017 Google

St Paul, Minnesota

Street View - Oct 2016







